**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-3499
_____

SHOUMIN CHAI,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent
_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A29-799-074)
_____

Argued June 23, 2011

Before:   HARDIMAN, VANASKIE and GREENBERG, *Circuit Judges*

(Filed: July 28, 2011 )

Joshua E. Bardavid, Esq.  *ARGUED*
22nd Floor
401 Broadway
New York, NY 10013-0000

Theodore N. Cox, Esq.
Suite 701
401 Broadway
New York, NY 10013-0000
*Attorneys for Petitioner*

Tony West, Esq., Assistant Attorney General
Stephen J. Flynn, Esq., Assistant Director
Sharon M. Clay, Esq., Attorney
Richard M. Evans, Esq., Attorney
Arthur L. Rabin, Esq., Attorney
Robert Michael Stalzer, Esq., Attorney  *ARGUED*
United States Department of Justice
Office of Immigration Litigation, Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
*Attorneys for Respondent*

———————

OPINION OF THE COURT
———————

VANASKIE, *Circuit Judge.*

Before us is a petition for review of a decision by the Board of Immigration

Appeals ("BIA") vacating and reversing an Immigration Judge's ("IJ") finding that

Petitioner Shoumin Chai ("Chai"), a native of China, was eligible for withholding of

removal under the Immigration and Nationality Act, § 237(a)(2)(A)(ii) and (iii), 8 U.S.C.

§ 1227(a)(2)(A)(ii) and (iii), and for relief under the Convention Against Torture

("CAT"), art. 3, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988),

1465 U.N.T.S. 85.  Because we find that the BIA correctly determined that Petitioner

failed to demonstrate that she was eligible for withholding of removal or relief under the

CAT, we will deny the petition for review.

I.

Because we write only for the parties, who are familiar with the facts and

procedural history of this case, we will set forth only those facts necessary to our

2

analysis. Chai, a native and citizen of the People's Republic of China, received a legal education there and graduated from Maritime College in 1982, receiving special training in maritime law. For the next five years, she was employed as a manager in the claims department of China Ocean Shipping Company ("COSCO"), a state-owned company. In 1987, Chai was sent to the United States by COSCO and the Chinese Government. She obtained a J-1 exchange scholar visa to work for a law firm in New York and Houston, enabling her to study the American legal system in depth. This training was undertaken so that COSCO would have a better understanding of how its claims were handled in the United States. Chai signed an agreement to return to China and to employment with COSCO following her training in the United States.

After completing her training, however, Chai obtained the permission of the Chinese government to obtain an LL.M. in Maritime Law from the University of Houston Law School before her return to China. About one month before her graduation from law school, in April, 1989, pro-democracy protests broke out in China. In early May, Chai was contacted by a friend in New York, who was organizing Chinese student protests in the United States. He invited Chai to participate in planned protests outside the Chinese consulate in Houston. She did so twice, first at the end of May, 1989, and again on June 5, 1989, one day after the massive crackdown on Tiananmen Square. Chai claims that the officials at the consulate obtained her photograph and identifying information at the time of these protests.

Chai received her LL.M. degree on May 13, 1989. Shortly thereafter, she was ordered by the Chinese consulate in Houston to return to China immediately. She replied

that she could not return as she was still working on her thesis. Chai also sought, and

received, permission from the Chinese government to remain in the United States for an

additional year to practice law. She was scheduled to return to China in August, 1990.

Chai did not officially return to China. Instead, she remained in America where

she sought, and obtained, lawful permanent resident status in 1990.[1] Chai, however, did

return to China clandestinely for ten days in August, 1990, with the assistance of friends

in the Chinese embassy in Washington, D.C., and another friend in the customs office in

Beijing, to visit her ailing father.

Around this time, Chai unsuccessfully attempted to renew her Chinese passport.[2]

Her attempts were rebuffed because she had remained in the United States without

permission from the Chinese government.

In March, 1990, she inquired about her situation from a friend, Mr. Di, who was a

high official in COSCO, during a secret meeting in Spain. Mr. Di informed her matter-

of-factly that she would be unable to get a passport, because she was involved in a protest

at Tiananmen Square and failed to return to China in accordance with her agreement with

---

[1] In her brief, Chai claims that she obtained this relief under the Chinese Student Protection Act. This, however, is impossible, as this Act was not passed until 1992. Pub. L. No. 102-404, 106 Stat. 1969. It is likely that Chai obtained this relief pursuant to Exec. Order No. 12,711, 55 F.R. 13897 (1990), issued by President George H. W. Bush on April 11, 1990, which had essentially the same effect, deferring deportation of Chinese nationals who were in the United States between June 5, 1989, and April 11, 1990, and waiving the requirement that J-visa holders must return to their home country for at least two years before attempting to return or seek permanent resident status in the United States.

[2] The official transcript of her hearing indicates that this attempt occurred in 1992. However, it does not fit with her travel to Spain in March, 1990. It is not clear which date is correct, and it is possible that the court reporter misheard the dates, as other dates, such as Chai's date of birth, are misstated in the transcript.

the Government and COSCO. Chai's brother, also a COSCO employee, was not permitted to travel outside of Chinese waters in his work, and her sisters were likewise denied exit permits.

While she was living in the United States, Chai developed a gambling addiction. To facilitate this addiction, she engaged in illegal behavior. On March 10, 2006, Chai pleaded guilty to, and was convicted of, one count of theft by deception and one count of theft by unlawful taking. She was sentenced to three years' imprisonment on each count, the terms to run concurrently.

On June 20, 2006, Chai was charged with removability under 8 U.S.C. § 1227(a)(2)(A)(ii), as an alien convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct, and under 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony. On October 5, 2006, Chai filed an Application for Withholding of Removal under the INA and for Withholding of Removal under Article III of the Convention Against Torture.[3] On February 15, 2008, after hearing extensive testimony, the Immigration Judge granted her application for Withholding of Removal. The Department of Homeland Security appealed this decision to the BIA, which sustained the appeal on July 17, 2008, reversing the decision of the IJ. The BIA ordered that Chai be removed from the United States. She now petitions for review of the BIA decision.

II.

---

[3] The Government argues that Chai waived any claim that she had under CAT by failing to raise the issue in her brief. It is clear, however, both from her Appellate Brief and from the record below, that Chai has preserved her CAT claim.

This appeal presents difficult questions concerning jurisdiction and whether the BIA applied an incorrect standard of review in determining Chai's credibility.[4] We need not, however, resolve these thorny issues. Although INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) deprives this Court of appellate jurisdiction over any final order of removal concerning an alien convicted of an aggravated felony, we nonetheless would have jurisdiction when an alien whose claim is otherwise unreviewable raises "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D). Even assuming *arguendo* that Chai has indeed raised a question of law, however, and accepting on its face her argument that the BIA applied an incorrect standard of review to the IJ's decision, we nonetheless conclude that the BIA did not err in concluding that the evidence presented by Chai was insufficient to warrant relief.

B.

To be eligible for withholding of removal, Chai must show that it is "more likely than not" that, if deported, she will be persecuted on account of her race, religion, nationality, membership in a particular social group or political opinion. *Lukwago v. Ashcroft*, 327 F.3d 157, 182 (3d Cir. 2003). The standard is the same for relief under the CAT. *See* 8 C.F.R. § 1208.16.

Chai did not present sufficient evidence to demonstrate that she is more likely than not to suffer persecution if she returns to China. Chai has not apprised us of any case in which an individual involved in two isolated protests related to the Tiananmen Square

---

[4] The BIA had jurisdiction under 8 C.F.R. § 1003.1(b).

incident has been persecuted so many years after the fact. Indeed, the evidence Chai cites indicates quite the opposite. For example, Chai cites the U.S. State Department Report for China, which found that while "[d]ozens of political activists have been arrested over the past decade for . . . political activities, such as advocating . . . a reappraisal of the 1989 Tiananmen Massacre," (A. 478), "the farther back in time an applicant's political involvement, the less likely he or she is to face reprisal from the government." (A. 479.) Specifically, with respect to protesters from the 1989 Tiananmen Democracy Movement, "Chinese authorities have claimed that all Tiananmen cases have been resolved, but they have not provided a credible accounting . . . . Individuals suspected of *ongoing involvement* in activities commemorating those killed in the Tiananmen Square massacre are subject to harassment and sometimes detention." (A. 480.) (emphasis added). This distinction is further emphasized in the Report. While the Report notes that "many students and scholars claim that their political activities in the United States, such as demonstrating at . . . Chinese consulates . . . would prompt security authorities to target them for punishment on their return to China," and that "[s]ome claim that their families in China have been harassed as a result of their political activities in the United States," (A. 481), the Report gives as a relevant example the situation of an individual who was involved in organized Chinese protest groups in America. (A. 481-82.) Chai does not fall into that category.

Moreover, other evidence offered by Chai, such as the alleged persecution of her relatives, including her brother who is also employed by COSCO, may be equally attributable to her failure to return to China after having been sponsored to come to the

7

United States to receive legal training to benefit her company and country.[5] Indeed, the chronological relationship between the Chinese government's request for Chai's return, its refusal to grant a new passport, and the government's likely mounting expectation that Chai would return to share her newly-gained knowledge and training with her compatriots supports this conclusion. Any retribution on the basis of Petitioner's failure to adhere to her contractual obligations does not warrant relief. *See Lukwago*, 327 F.3d at 182.

### III.

For the foregoing reasons, we will affirm the decision of the BIA.

---

[5] We also note that the IJ found that Chai's testimony regarding her family's persecution was likely "embellish[ed]," (A. 19), an adverse credibility determination that was never reversed by the BIA.